UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL LINS,<br><br>             Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>             Defendant. | CASE NO. 3:15-cv-05849 DWC<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

    Plaintiff Michael Lins filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 5.

    After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when he failed to fully develop the record regarding Dr. Haynes's opinion Plaintiff required a neurological evaluation to determine Plaintiff's diagnosis, particularly where the ALJ afforded great weight to Dr. James Haynes's opinion. Had the ALJ fully developed the record, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's

error is therefore harmful, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On May 29, 2012, Plaintiff filed an application for DIB, alleging disability as of March 18, 2002. *See* Dkt. 11, Administrative Record ("AR") 17. The application was denied upon initial administrative review and on reconsideration. AR 17. A hearing was held before ALJ John W. Rolph on March 31, 2014. AR 17. At the hearing, Plaintiff amended the alleged onset of disability date to December 30, 2010. AR 17. In a decision dated April 25, 2014, the ALJ determined Plaintiff to be not disabled. *See* AR 17-27. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 25, 2015, making the ALJ's decision the final decision of the Commissioner. *See* AR 1; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) using the wrong legal standard at Step Five of the sequential evaluation process; (2) improperly considering Plaintiff's credibility; (3) failing to properly consider the lay witness testimony; and (4) failing to more fully develop the record as to Dr. Haynes's medical opinion Plaintiff required a neurological evaluation for a diagnosis. Dkt. 18, p. 4.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DEFENDANT'S DECISION TO DENY
BENEFITS - 2

## DISCUSSION

**I.   Whether the ALJ Was Required to Further Develop the Record Regarding Dr. Haynes's Opinion Plaintiff Required a Neurological Evaluation.**

Plaintiff argues the ALJ erred by failing to fully develop the record as to Dr. Haynes's opinion regarding Plaintiff's need for a neurological evaluation, referral, and diagnosis. Dkt. 18, pp. 13-15.  The Court agrees.

Dr. Haynes testified as a non-examining neurological medical expert at Plaintiff's hearing. AR 52-55. Although Dr. Haynes initially testified there was sufficient evidence of record to offer testimony regarding Plaintiff's medical status, *see* AR 52, he later testified "what is very obviously lacking here are the diagnosis – any specialty care" and "as [the ALJ] pointed out, the gaps in the care … at the specialty level is lacking." AR 53. Although Dr. Haynes again noted "gaps" in the record and a "lack of a proper diagnosis, and a pretty scanty treatment record", he opined Plaintiff would require "seizure precautions" for work limitations, including no commercial driving, heights, moving machinery, and power tools. AR 54. At the hearing, counsel for Plaintiff asked Dr. Haynes, "Given the gaps that are in the record, would you feel it's appropriate that there be a neurological evaluation …?" Dr. Haynes responded, "Well, yeah. I think that's what I said. I guess I didn't say it loudly enough and clear enough, he needs specialty care and preferably, at a referral level." AR 55.

The ALJ afforded "great weight" to Dr. Haynes's opinion, finding, in part:

> Dr. Haynes opined that the claimant is precluded from commercial driving, working at heights or with moving machinery, or power tools. Dr. Haynes testified that due to the lack of records he was unable to assess any physical (exertional) restrictions. Dr. Haynes' opinion is granted great weight; when the claimant does get a migraine such restrictions are reasonable.

AR 25. In addition, the ALJ noted:

> Impartial medical expert James M. Haynes, MD, a board certified neurologist, testified that there are a 'multitude' of ways to manage the claimant's headaches and he needs better, more specialized neurological care. He testified that the claimant's reliance on [a medication] has likely become part of the etiology of his headaches, causing rebound headaches. Dr. Haynes testified that due to the lack of specialty [] treatment there is not adequate information and the claimant does not meet a listing.

AR 24. Finally, at several parts of the opinion, the ALJ commented on the lack of treatment records, noting the medical records were "quite sparse", *see* AR 24, there were "massive gaps in treatment", *see* AR 25, the "gap of over two years in treatment records", *see* AR 21, the "single instance of treatment in 2014, *see* AR 24, and "[n]o exam records [to] accompany" a change in medications, *see* AR 24.

An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Id.* (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)) (quotations omitted). The duty to fully and fairly develop the record may be discharged "in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.* at 1150 (citing *Tidwell*, 161 F.3d at 602; *Smolen*, 80 F.3d at 1279).

In *Tonapetyan,* the Ninth Circuit held that an ALJ's decision should have been reversed because he failed to further develop the record when he relied heavily on a medical examiner's testimony, which was "equivocal" and expressed "concern over the lack of a complete record upon which to assess [plaintiff's] mental impairment." *Id.* at 1150-51. The medical examiner testified the evidence showed that plaintiff was "somewhat depressed" but "resisted concluding that she did or did not suffer from schizophrenia, however, suggesting that he would 'have to see

more evidence of that and a more detailed explanation'" from the plaintiff's treating doctor. *Id.* at 1150. The medical expert ultimately diagnosed the plaintiff with only mild depression, but "[o]nly when pressed by the ALJ," and still he "remained equivocal throughout his testimony." *Id.* When asked whether a more complete report from the plaintiff's doctor would affect his opinion, the medical expert responded that it would, if it "clarified her symptoms." *Id.* In his written opinion, the ALJ "relied heavily on [the medical expert's] testimony," adopting his diagnosis of mild depression as well as his "criticisms" of the incompleteness of the plaintiff's treating doctors' opinions. *Id.* The Ninth Circuit reversed, holding that "[g]iven this reliance, the ALJ was not free to ignore [the medical expert's] equivocations and his concern over the lack of a complete record," nor should he have ignored "the [medical expert's specific recommendation that a more detailed report from [the treating doctor] be obtained." *Id.* at 1150-51.

Here, as noted by Plaintiff, the case before the Court presents similar facts to *Tonapetyan*. Although Dr. Haynes initially testified the evidence of record permitted him to form a medical opinion regarding Plaintiff's limitations, *see* AR 52, Dr. Haynes's subsequent testimony became indefinite and indecisive. He noted several gaps in the medical record, the "scanty treatment record", and the lack of diagnosis in the record. *See* AR 53, 54. He also testified Plaintiff's allegation of disabling pain due to the headaches is "unusual" and "what [Plaintiff is] describing is one of the worst cases of … [a] migraine, *if that's what it is* …." AR 53 (emphasis added). Finally, Dr. Haynes noted the lack of specialty care, observed there are "a multitude of ways to manage headache … a sub-specialty within the specialty of neurology," and testified a neurological specialist and referral would be appropriate to diagnose Plaintiff. *See* AR 52-55. As in *Tonapetyan*, the ALJ here "clearly relied heavily on" Dr. Haynes's testimony in concluding Plaintiff was not disabled, adopting Dr. Haynes's opined limitations and affording his opinion

"great weight." *See* AR 25; *see also Tonapetyan*, 242 F.3d at 1150-51. "Given this reliance, the ALJ was not free to ignore" Dr. Haynes's equivocations, observations over the dearth of medical records, and recommendation Plaintiff obtain a neurological evaluation to obtain a diagnosis. *See Tonapetyan*, 242 F.3d at 1150-51. This is particularly true, where, as here, the ALJ identified the "gaps" in treatment and sparse medical records, and freely used these gaps to discount Plaintiff's testimony. *See* AR 25. Instead, the ALJ had a duty to supplement the record to resolve the ambiguities identified by the doctor—and noted by the ALJ—and the ALJ's failure to do so was error. *See id.*

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Had the ALJ more fully developed the record and obtained a referral and diagnosis from a neurological specialist, the specialist may have offered an opinion regarding additional functional limitations related to Plaintiff's headaches. Consequently, the ALJ may have included additional limitations in the RFC and in the hypothetical questions posed to the vocational expert. *See Tonapetyan*, 242 F.3d at 1150-51 (finding that the ALJ's failure to fully develop the record was not harmless); *see also Struck v. Astrue*, 247 F. App'x 84, 86 (9th Cir. 2007) (same); *Tate v. Astrue,* No. CV 11-3213 CW, 2012 WL 1229886, at *6 (C.D. Cal. Apr.12, 2012) (finding

the ALJ erred in not further developing record when the medical expert "suggested that it was difficult for her to form an opinion with respect to Plaintiff's disability" and the ultimate assessment of Plaintiff's RFC was "highly equivocal"). As the ultimate disability determination may have changed, the ALJ's error is not harmless and requires reversal. *Molina*, 674 F.3d at 1115.

## II. Whether the ALJ Properly Considered the Lay Witness Testimony.

Plaintiff also maintains the ALJ erred by failing to properly weigh the lay witness statements submitted by Plaintiff's mother, Diana Lins. Dkt. 14, pp. 9-11. Ms. Lins completed a third party function report on July 8, 2012 and a seizure questionnaire on December 15, 2012. *See* AR 212-20; 245-46. Ms. Lins observed Plaintiff is "unable to walk, drive, [and] provide personal care … when symptomatic." AR 212; *see also*, *e.g.*, AR 212-20 (offering her opinion throughout regarding Plaintiff's functional limitations). She also stated on a "bad day [Plaintiff] sleeps, vomits, cries" and he "always tries to have someone with him due to rapid onset" when he is out of the house. AR 213, 215-16.

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. An ALJ may discredit lay testimony if it conflicts with medical evidence, but it cannot be rejected as unsupported by the medical evidence. *See Lewis*, 236 F.3d at 511 (noting an ALJ

may discount lay testimony that "conflicts with medical evidence") (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

Here, the ALJ rejected the lay witness statement of Ms. Lins, finding in full: "Third party function reports offered by the claimant's mother are granted little weight; they are inconsistent with the objective findings of Drs. Mayers and Gaffield." AR 25 (citation omitted).

First, Plaintiff contends the ALJ improperly implied Ms. Lins's statements should be discounted simply because she is Plaintiff's mother. *See* Dkt. 18, p. 12. The Court agrees "[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony", *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996). However, nothing in the ALJ's brief finding regarding Ms. Lins's statements suggests or implies he rejected Ms. Lins's opinions because of her familial relationship with Plaintiff. Thus, the Court finds no error with the ALJ's treatment of Ms. Lins's statement on this basis.

Second, Plaintiff maintains the ALJ's finding "does not provide this court with specific facts to determine what objective findings of the two consultative examiners were inconsistent" with Ms. Lins's report. Dkt. 18, p. 12. The Court agrees. As noted above, inconsistency with medical evidence is a germane reason for discounting lay witness testimony. *See Lewis*, 236 F.3d at 511. But, here, the ALJ dismissed Ms. Lins's written statement in a conclusory fashion without any explanation regarding what portion of Ms. Lins's testimony was inconsistent with what portion of the "objective findings of Drs. Mayers and Gaffield". AR 25. Thus, because the ALJ did not give germane reasons supported by substantial evidence in the record for rejecting Ms. Lins's statement, the ALJ also erred in dismissing Ms. Lins's lay witness statement. *See Hughes v. Comm'r of Soc. Sec. Admin.*, 403 F. App'x 218, 221 (9th Cir. 2010) (finding the ALJ

erred in offering only conclusory statements to reject lay witness testimony). Thus, upon remand, the ALJ shall also reconsider the lay witness testimony of Ms. Lins.

### III. Whether the ALJ erred by failing to provide clear and convincing reasons supported by the record to find Plaintiff lacked credibility.

Plaintiff also contends the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's testimony about his symptoms and limitations. Dkt. 18, pp. 11-14. Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

In this case, the ALJ found Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms to be not entirely credible. *See* AR 22, 25-26. The ALJ also found, in part, "the lack of treatment, including the massive gaps in treatment, even if the claimant did not have insurance, indicate that his headaches were intermittent enough to be controlled with the use of his medications …. [f]or all of these reasons, the claimant's allegations are not fully credible." AR 25. In light of the ALJ's error in fully developing the record as to the medical evidence, the credibility of the Plaintiff's statements necessarily must be reviewed, particularly where, as here, the ALJ rejected Plaintiff's statements based in part upon a lack of medical evidence and treatment. *See* AR 22-25. Thus, upon remand, the ALJ should reconsider

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 9

Plaintiff's alleged symptoms anew as necessitated by further consideration of the medical opinion evidence.[1]

### II.     Whether the ALJ Properly Evaluated Step Five of the Sequential Evaluation.

Finally, Plaintiff avers the ALJ employed the wrong legal standard at Step Five, reciting a legal standard as "merely a 'burden of going forward'" instead of the burden shifting to the Commissioner at Step Five. *See* Dkt. 18, pp. 4-5. Reciting the Step Five legal standard, the ALJ stated:

> Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, ***the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy*** that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

AR 19 (emphasis added).

The Court agrees with Plaintiff's interpretation of the legal standard at Step Five. If a claimant cannot perform his or her past relevant work, at Step Five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). But, the Court finds no error with the ALJ's recitation of the law governing the Commissioner's burden at Step Five. *See* AR 19. Indeed, directly after the sentence Plaintiff opposes, the ALJ recited the Commissioner's burden at Step Five as requiring the Commissioner to establish claimants can

---

[1] On March 16, 2016, Social Security Ruling ("SSR") 16-3p—Evaluation of Symptoms in Disability Claims—became effective, eliminating the term "credibility" from the Social Security Administration's policy, and clarifying "adjudicators will not assess an individual's overall character or truthfulness." *See* SSR 16-3p, 2016 WL 1119029, at *1, 10 (S.S.A. Mar. 16, 2016). The ALJ's January 2014 decision came nearly two years before SSR 16-3p. Thus, he could not have employed the new SSR. Nevertheless, upon remand, the ALJ should address SSR 16-3p as part of the review regarding Plaintiff's alleged symptoms.

1  perform other work existing in significant numbers in the national economy. *See id.* This is

2  precisely what the law requires. Accordingly, the Court finds no error with the ALJ's recitation

3  of the legal standard at Step Five. Nevertheless, as discussed in Section I, *supra*, had the ALJ

4  properly weighed the medical evidence, the RFC and hypothetical questions posed to the

5  vocational expert may have included additional limitations, thus changing the Step Five findings,

6  if any. *See* AR 21-22, 74-89. Upon remand, the ALJ shall re-evaluate the RFC and Step Five

7  findings.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 28th day of July, 2016.

David W. Christel
United States Magistrate Judge